McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Lejf E. Knutson, #234203
  *lejf.knutson@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:     (559) 433-1300
Facsimile:     (559) 433-2300

Attorneys for Defendant Lexington Insurance
Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK TARAKANOV, an individual, and NELYA TARAKANOV, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:19-CV-05666LB<br><br>**DEFENDANT LEXINGTON INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6), OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES, OR FOR A MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(e) AND *CORRECTED* MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     January 2, 2020<br>Time:     9:30 A.M.<br>Crtrm.:   Department B (15th Floor)<br><br>The Hon. Magistrate Judge Laurel Beeler |

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or
Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES..............................................................2

I.    INTRODUCTION .........................................................................................................2

II.   STATEMENT OF ISSUES TO BE DECIDED ..........................................................4

III.  BACKGROUND FACTS ..............................................................................................6

    A.    The Lexington Homeowners' Policy .................................................................6

    B.    Plaintiffs Suffered An Insured Loss But Failed To Repair The Residence And Do Not Allege That They Replaced It ..................................................................8

    C.    Plaintiffs' December 21, 2018 Correspondence To Lexington ..............................12

    D.    Lexington's March 11, 2019 Correspondence To Plaintiffs...............................12

IV.  LAW AND ARGUMENT ............................................................................................13

    A.    Standard On Motions To Dismiss Pursuant To F.R.C.P. 12(b)(6) ...........................13

    B.    Plaintiffs' Claim For Breach Of Contract Does Not Allege Facts Supporting A Claim Upon Which Relief Can Be Granted..................................................................13

        1.    Plaintiff's Claim For Breach Of Contract Is Expressly Contradicted By The Terms Of The Policy.................................................................................13

        2.    Plaintiffs Misstate Their Conduct and Misconstrue Lexington's Letter......16

        3.    To The Extent Plaintiffs Argue That Lexington Anticipatorily Breached The Policy, That Argument Is Incorrect, And Does Not Save Their Claims.............................................................................................................17

    C.    Absent A Viable Claim For Breach Of The Insurance Contract, Plaintiffs' Second Claim For Breach Of The Implied Covenant Should Also Be Dismissed .............................................................................................................18

    D.    Plaintiffs' Third Claim For "Fraudulent Concealment" Also Does Not State A Claim For Which Relief Can Be Granted .....................................................................19

    E.    Plaintiff's Fourth Claim For Unfair Competition Also Fails To Plead Facts Establishing A Claim On Which Relief Can Be Granted .........................................22

    F.    Alternatively, Plaintiffs' Claim For Punitive Damages Should Be Dismissed........23

    G.    Alternatively, Plaintiffs Should Be Required To Provide A More Definite Statement Of Their Claims .........................................................................................24

V.   CONCLUSION.............................................................................................................25

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

i

3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Altman v. PNC Mortg.*
850 F.Supp.2d 1057 (E.D.Cal. 2012)................................................................24

*Anaya v. Machines de Triage et Broyage*
2019 WL 359421 (N.D.Cal. Jan. 29, 2019) .......................................................24

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)..........................................................................................24

*Barnes v. Travelers Comm'l. Ins. Co.*
2018 WL 6431877 (C.D.Cal. Oct. 12, 2018) .....................................................15

*Bly-Magee v. California*
236 F.3d 1014 (9th Cir. 2001)...........................................................................21

*California Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*
62 Cal.App.4th 1166 (1998)..........................................................................19, 20

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal.4th 163 (1999) .....................................................................................4, 23

*Cyrus v. Haveson*
65 Cal.App.3d 306 (1976)..................................................................................24

*Diapaola v. J.P. Morgan Chase Bank*
2011 WL 3501756 (N.D.Cal Aug. 10, 2011)......................................................24

*Garage etc. Employees Union v. Pac. Mut. Life Ins. Co.*
2 Cal.App.3d 706 (1969)....................................................................................18

*Gibson v. Government Employees Ins. Co.*
162 Cal.App.3d 441 (1984)................................................................................19

*Goulatte v. CitiMortgage, Inc.*
2013 WL 12132060 (C.D.Cal. Feb. 27, 2013)....................................................13

*Griffin Indus., Inc. v. Irvin*
496 F.3d 1189 (11th Cir. 2007)..........................................................................13

*Hambrick v. Healthcare Partners Med. Grp., Inc.*
238 Cal.App.4th 124 (2015)...............................................................................19

*Harary v. Blumenthal*
555 F.2d 1113 (2nd Cir. 1977)...........................................................................13

*Hernandez v. TLC of the Bay Area, Inc.*
263 F.Supp.3d 849 (N.D.Cal. 2017) ..................................................................19

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

ii                                                                    3:19-CV-05666LB
Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Kelley v. Corrections Corp. of Am.*
  750 F.Supp.2d 1132 (E.D.Cal. 2010)................................................24

*Kwikset Corp. v. Superior Court*
  51 Cal.4th 310 (2011) ......................................................................23

*Levine v. Blue Shield of California*
  89 Cal.App.4th 1117 (2010)............................................................20

*Los Angeles Lakers, Inc. v. Fed. Ins. Co.*
  869 F.3d. 795 (9th Cir. 2017)..........................................................14

*Love v. Fire Ins. Exch*
  221 Cal.App.3d 1136 (1990)............................................................18

*Maler v. Superior Court*
  220 Cal.App.3d 1592 (1990)............................................................22

*Maloney v. Verizon Internet Servs., Inc.*
  2009 WL 8129871(C.D. Cal. 2009)..................................................13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 025 (9th Cir. 2008)............................................................18

*Marentes v. State Farm Mut. Auto. Ins. Co.*
  224 F.Supp.3d 891 (N.D.Cal. 2016) ................................................19

*Martinez v. Scott Specialty Gases, Inc.*
  83 Cal.App.4th 1236 (2000)............................................................18

*Maryland Cas. Co. v. Knight*
  96 F.3d 1284 (9th Cir. 1996)............................................................15

*Milhouse v. Travelers Commercial Ins. Co.*
  982 F.Supp.2d 1088 (C.D.Cal. 2013)..............................................15

*Minich v. Allstate Ins. Co.*
  193 Cal.App.4th 477 (2011).............................................................15

*Modern Woodcrafts, Inc. v. Hawley*
  534 F.Supp. 1000 (D.Conn. 1982) ...................................................13

*Moradi-Shalal v. Fireman's Fund Ins. Companies*
  46 Cal.3d 287 (1988) .......................................................................22

*Murray v. State Farm Fire & Cas. Co.*
  219 Cal.App.3d 58 (1990)...............................................................18

*Neubronner v. Milken*
  6 F.3d 666 (9th Cir. 1993)...........................................................21, 22

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Palmer v. Truck Ins. Exch.*
21 Cal.4th 1109 (1999) ....................................................................................14

*Parrino v. FHP, Inc.*
146 F.3d 699, 706 (9th Cir. 1998)...................................................................13

*Rees v. PNC Bank, N.A.*
308 F.R.D. 266 (N.D.Cal. 2015).....................................................................24

*Rubin v. Green*
4 Cal.4th 1187 (1993) ......................................................................................22

*Safeco Ins. Co. v. Superior Court*
216 Cal.App.3d 1491 (1990)............................................................................22

*Schnall v. Hertz Corp.*
(2000) 78 Cal.App.4th 1144 ........................................................................4, 23

*Semegen v. Weidner*
780 F.2d 727 (9th Cir. 1985)............................................................................21

*Steinle v. City and Cty. Of San Francisco*
919 F.3d 1154 (9th Cir. 2019)..........................................................................13

*Stephens & Stephens XII, LLC v. Fireman's Fund Insurance Co.*
231 Cal.App.4th 1131 (2014)......................................................................15, 18

*Taylor v. Johnston*
15 Cal.3d 130 (1975) ......................................................................................18

*United States v. Ritchi*
342 F.3d 903 (9th Cir. 2003)............................................................................13

*United States v. United Healthcare Ins. Co.*
848 F.3d 1161 (9th Cir. 2016)..........................................................................21

*Waller v. Truck Ins. Exch., Inc.*
11 Cal.4th 1 (1995) ..........................................................................................18

*Zhang v. Superior Court*
57 Cal.4th 364 (2013) ......................................................................................23

## STATUTES

Business & Professions Code § 17200 ................................................2, 4, 5, 11, 22, 23

C.C.R. § 2695.7(b)(3) ....................................................................................3, 19

Civil Code § 3294(a)..............................................................................................23

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

# TABLE OF AUTHORITIES
## (continued)

**Page**

Civil Code § 3294(c) ..................................................................................................24

Code of Civil Procedure Rule 12(b)(6) ......................................................................13

Federal Rule of Civil Procedure 12(b)(6) ....................................................................1

Federal Rule of Civil Procedure 12(e) .........................................................................1

Federal Rule of Procedure 9(b) ............................................................................21, 22

Insurance Code § 10102 ................................................................................7, 20, 21, 23

Insurance Code § 10102(c) .........................................................................................20

Insurance Code § 2051.5(a)(2) ...............................................................................14, 16

Insurance Code §790.03 .............................................................................................22

Insurance Code §790.03(h) ........................................................................................22

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

v

3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or
Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

**<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**

**PLEASE TAKE NOTICE THAT** on January 2, 2020, at 9:30 A.M. or as soon thereafter as the matter may be heard, in Department B (15th Floor) of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Lexington Insurance Company ("Lexington") will and hereby does move the Court pursuant to F.R.C.P. 12(b)(6), to dismiss Plaintiffs' First Amended Complaint ("FAC") and each claim for relief therein, both separately and collectively without leave to amend or in the alternative, to dismiss Plaintiffs' punitive damages claims; or in further alternative pursuant to F.R.C.P. 12(e), for a more definite statement.

This Motion is based on the grounds that on its face, none of the allegations of the FAC state a claim upon which relief can be granted; alternatively, Lexington moves to dismiss Plaintiffs' claim for punitive damages on the grounds that their allegations fail to allege facts or conduct supporting an award of punitive damages.

In the further alternative, Lexington brings its motion for a more definite statement on the grounds that the FAC both fails to allege that Plaintiffs "replaced" the insured property or provided notice to Lexington of such replacement, while inconsistently alleging that Plaintiffs "performed fully" under the Policy. Because "full performance" under the policy would require both that the insureds "repaired" or "replaced" the insured property and provided Lexington with notice of such, Lexington's alternative motion seeks a more definite statement concerning: (1) whether the Plaintiffs did, or did not "replace" the insured property, and (2) whether notice was provided and, if so, when.

Lexington's Motion is based upon this Notice and Motion, the Points and Authorities discussed herein, all the papers, pleadings and records on file herein, including its Reply, and on such other and further argument and evidence as the Court may receive.

Dated: November 25, 2019

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP

By: _____/s/ James P. Wagoner_____
James P. Wagoner
Lejf Knudson
Nicholas H. Rasmussen
Attorneys for Defendant Lexington Ins. Co.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1                                                          3:19-CV-05666LB
Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The original Complaint of Plaintiffs Mark and Nelya Tarakanov (collectively, "Plaintiffs" or the "Tarakanovs"), filed October 9, 2019, alleged claims against Defendant Lexington Insurance Company ("Lexington") for breach of contract; breach of the implied covenant of good faith and fair dealing; fraud; negligent misrepresentation; and unfair competition pursuant to Business & Professions Code § 17200, *et seq.*, all predicated on Plaintiffs' alleged right to recover under the policy's "Extended Replacement Cost" ("ERC") and "Ordinance" Coverages. Lexington moved to dismiss upon the grounds that (1) the policy's "Loss Settlement" provision, as amended by a "Specified Additional Amount Endorsement", expressly provides that Lexington "will pay no more than the actual cash value of the damage *until actual repair or replacement is complete*" (emphasis added), and (2) the claims alleged did not state facts sufficient to show that Plaintiffs were entitled to recover under the ERC and Ordinance Coverages as they alleged that they had sold the insured property rather than repair it, and failed to allege that they had replaced it.

On October 31, 2019, Plaintiffs, in lieu of opposing Lexington's motion, filed a Notice of Intent to File a First Amended Complaint ("FAC"). Based on essentially the same insufficient allegations, Plaintiffs' FAC filed on November 18, 2019 again asserts claims for breach of contract, breach of the implied covenant, fraudulent concealment, and unfair competition, again alleging that they sold rather than repaired the insured property and likewise failing to allege that they replaced it.

Though Plaintiffs' FAC now contains new allegations of communications between Lexington and Plaintiffs, as well as allegations "on information and belief" that Lexington engaged in a "scheme" to prevent Plaintiffs from recovering the full value of the policy's ERC and Ordinance coverages, their amendments add nothing of substance to their claims. As an initial matter, the face of Plaintiffs' FAC reveals that their claims for breach of contract and breach of the implied covenant suffer the same, basic deficiency as those plead in their initial Complaint: that Plaintiffs admittedly never fulfilled the conditions necessary to recover the ERC and Ordinance coverages, and thus were not and are not entitled to recover under those coverages.

Further, and contrary to Plaintiffs' assertions, Lexington was not obligated to prospectively

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

2                                                    3:19-CV-05666LB
Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

"assure" them that in the hypothetical event that they fulfilled the condition of or repairing or replacing the insured property at some unspecified future time, it would pay sums to them under the ERC and Ordinance coverages. More to the point, such an "assurance" would be essentially meaningless, as the policy already expressly so provides. Moreover, California law does not recognize a duty by an insurer to further "assure" insureds that it will fulfill the terms of the policy.

Plaintiffs' amendments alleging claims for "fraudulent concealment" are equally unavailing. Put bluntly, Plaintiffs' construction of Lexington's March 11, 2019 position letter simply misrepresent the *true* content of that letter, as illustrated by the copy of that letter plead herewith by Lexington as matter "intrinsic" to Plaintiffs' claims and incorporated by reference in the FAC. As set forth therein, Lexington never "denied" coverage to the Plaintiffs under the ERC and Ordinance Coverages; rather, it took the position—admittedly, according to the FAC—that because the Plaintiffs had not "repaired" or "replaced" the insured property, that "Lexington respectfully declines to extend payment *at this time* for" those coverages, but would "consider a supplemental claim for indemnification under the ERC coverage once the requisite conditions for coverage have been met" (emphasis in FAC and the original letter). Lexington's letter likewise stated that "Lexington respectfully declines payment, *at this time*, under the Ordinance or Law Coverage provision of the Policy until there is credible evidence of the costs the insureds have incurred or will be obligated to incur due to the enforcement of any actual 'ordinance or law'…". Plaintiffs' attempt to convert this obviously conditional rejection of their premature demand for sums under the ERC and Ordinance Coverages into an unconditional denial of any recovery of those sums by relying on Lexington's quotation of the policy's "Suit Against Us" provision. However, both because in the context of the letter the reference was only to the declination of payment "at this time," and because the statement was required by the Fair Claims Settlement Practices Regulation, Title 10, C.C.R. § 2695.7(b)(3), it did not constitute a declination of coverage upon the fulfillment of the necessary conditions of repair or replacement of the insured residence and notice thereof, and consequently serves as no support for Plaintiffs' claims.

In a further attempt to convert Lexington's obviously justified rejection of their premature demand for payment under the ERC and Ordinance coverages *without fulfilment of the express requirement of the policy* that Plaintiffs' first "repair" or "replace" the insured property, Plaintiffs, "on

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

3                                    3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or
Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

information and belief", allege a "scheme" by Lexington to "avoid covering replacement costs". Plaintiffs' claims ignore two critical factors. First, the language on which Plaintiffs' claims rely—contained in a "Notice to Consumers" attached to the policy—simply does not constitute a "promise" to Lexington's insured(s). Second, Plaintiffs again ignore that both the Notice itself and the language therein *are mandated by the California Insurance Code*. In consequence of the first, the Notice cannot form the basis for claims against Lexington, because its statements are no more than advisory or cautionary statements to insureds. As to the second, because the Notice is mandated by the State, by law Lexington cannot alter or contradict it, and moreover, the representations therein *are not Lexington's*. As such Lexington cannot be liable to Plaintiffs for statements therein, *even if* they are untrue, incorrect, or inadvisable

Finally, Plaintiffs' claim for "unfair competition" as alleged in the FAC reflects no more than a regurgitation of their claims for "fraudulent concealment", along with Plaintiffs' own self-serving allegations "on information and belief" that Lexington somehow "schemed" to "wrongfully den[y] properly submitted claims for loss … allowing it to ultimately deny the insured's claim." California law is clear, however, that Plaintiffs may not merely relabel claims for breach of contract or breach of the implied covenant as a claim for "unfair competition" under Business & Professions Code § 17200. Instead, in order to state a claim under that provision, plaintiffs must allege specific, separate factual allegations of "conduct that threatens an incipient violation of an anti-trust law, or violates the . . . spirit of one of those laws because its effects are comparable to or the same as a violation of the law . . .". *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 186-187 (1999); *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1165-1167 (2000). Plaintiffs' generalized allegations of "unfair competition" and self-serving contentions, based solely on their alleged "information and belief," do not meet that burden. Accordingly, Plaintiffs' FAC should be dismissed without leave to amend.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the FAC alleges facts sufficient to support their claims for relief; specifically:

a. Whether the terms of the Lexington's March 11, 2019 position letter in response to Plaintiffs' December 21, 2018 letter constituted an absolute "denial" of Plaintiffs'

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

4                                                                3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

claim for recovery under the ERC and Ordinance Coverages which forever foreclosed any right by them to recover under those particular coverages, even if they later fulfilled the conditions precedent to coverage; and

b. Whether Plaintiffs' claim for breach of contract alleges fact sufficient to state a claim for relief where the terms of the policy plead with the FAC and the allegations of the FAC, in conjunction with the terms of the December 21, 2018 and March 11, 2019 letters, the contents of which are alleged in part in the FAC but which were not plead as a whole, establish that Plaintiffs have not complied with a condition precedent to recovery under the policy in that the policy requires that the insureds "repair or replace" the insured structures in order to collect sums beyond the lesser amount of either the actual cash value of the loss or the policy limit;

c. Whether Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing alleges facts sufficient to state a claim where the terms of the policy plead with the FAC, coupled with what is alleged in the FAC and what is not, establish that Plaintiffs have no present right to recover under the policy;

d. Whether Plaintiffs' claim for fraudulent concealment alleges sufficient concrete factual allegations that Lexington "concealed" information from Plaintiffs, where Plaintiffs' claims rest solely on statements mandated by law and Plaintiffs' own factually devoid and self-serving allegations made "on information and belief'";

e. Whether Plaintiffs' claim for "unfair competition" under California Business & Professions Code § 17200 alleges facts sufficient to state a claim where the FAC merely recasts Plaintiffs' prior allegations of fraud premised solely on legally-mandated statements in a Notice to Consumer contained in the policy and Plaintiff's own, factually devoid and self-serving allegations made on "information and belief";

In the alternative:

2. Whether the allegations of Plaintiffs' FAC allege sufficient factual conduct reflecting "malice," "willfulness", "wantonness," "oppression," or "conscious disregard" by Lexington sufficient to support Plaintiffs' claims for punitive damages.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

3.    Whether, since Plaintiffs' FAC fails to allege that Plaintiffs "replaced" the insured property and, if so, gave notice to Lexington of such "replacement", yet also alleges that Plaintiffs "performed fully under" the Policy,  Plaintiffs should be required to replead to provide a more definite statement specifically indicating: (1) whether Plaintiffs did, or did not "replace" the insured property, and (2) whether and when Lexington was given notice of such replacement.

## III.    BACKGROUND FACTS

### A.    The Lexington Homeowners' Policy

Lexington issued Homeowners Policy, No. 19212999 (the "Policy") to Mark and Nelya Tarakanov for the policy period October 6, 2017 to October 6, 2018, with coverage limits of $1,500,000.00 for "Dwelling"; $150,000.00 for "Other Structures"; $300,000.00 for "Contents"; and $150,000.00 for "Loss of Use". (See FAC, Ex. A [Docket 13], at p. 4.)

At "SECTION I – PROPERTY COVERAGES", "E. Additional Coverages", the Policy provides as relevant:

**11.    Ordinance Or Law**

**a.**    You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)**    The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

. . .

**c.**    We do not cover:

**(1)**    The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

. . .

This coverage is additional insurance.

(FAC, Ex. A [Docket 13] at p. 22.)

The Policy also contains the Notice to Consumers, which provides in critical part as follows:

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

6                                3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

**NOTICE TO CONSUMERS — CALIFORNIA RESIDENTIAL INSURANCE DISCLOSURE**

This disclosure is required by **Section 10102 of the California Insurance Code.** This form provides general information related to residential property insurance and is not part of your residential property insurance policy. Only the specific provisions of your policy **will determine** whether a particular loss is covered and the amount payable. The information provided does not preempt existing California law.

**PRIMARY FORMS OF RESIDENTIAL DWELLING COVERAGE**

**You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed. Guaranteed Replacement Cost is the broadest level of coverage.**

. . .

X **EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash **value** until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount See your policy for the additional coverage that applies.

. . .

**INFORMATION YOU SHOULD KNOW ABOUT RESIDENTIAL DWELLING INSURANCE**

**AVOID BEING UNDERINSURED:** Insuring your home for less than its replacement cost may result in your having to pay thousands of dollars out of your own pocket to rebuild your home if it is completely destroyed. Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.

. . .

**DEMAND SURGE:** After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies and construction labor. This effect is known as demand surge. Demand surge can increase the cost of rebuilding your home. Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

. . .

(FAC, Ex. A [Docket 13], at pp. 53-54.)

In addition, the Policy contains a "SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A – DWELLING ENDORSEMENT" (the "Specified Additional Amount endorsement"). (*Id.* at 65.) That endorsement states that it "APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS", and identifies the "Additional Amount of Insurance" available as "50%". (*Id.*) As relevant, the endorsement states:

To the extent that coverage is provided, we agree to provide an additional amount of

7                                                          3:19-CV-05666LB

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

insurance in accordance with the following provisions:

. . .

B.    Subparagraph 2. of Paragraph C. Loss Settlement (SECTION I – CONDITIONS) is deleted in its entirety and replaced with the following:

2.    Buildings covered under Coverage A at replacement cost without deduction for depreciation, subject to the following:

. . .

d.    We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete we will settle the loss as noted in 2.a. and b. above.

. . .

(FAC, Ex. A [Docket 13], at pp. 65-66.)

### B.    Plaintiffs Suffered An Insured Loss But Failed To Repair The Residence And Do Not Allege That They Replaced It

As alleged in the FAC, on or about October 9, 2017, the Plaintiffs' insured residence and related structures were destroyed by wildfire, a covered peril. (FAC, ¶ 21.)  The FAC alleges that Plaintiffs gave "'prompt notice' to Lexington" of the loss. (*Id.,* at ¶ 24.) The FAC further alleges that after Lexington "determined that [the insured property] was … a total loss", it "issued payment for some of the losses that the Tarakanovs incurred" but "did not issue payment for other losses covered by the Insurance Policy, including under the ERC Coverage and Ordinance Coverage". (*Id.,* at ¶¶ 25-26.)  The FAC also alleges that "Lexington also failed to confirm whether or not the company would honor these provisions if and when the Tarakanovs rebuilt." (*Id.,* at ¶ 26.)

The FAC alleges that Plaintiffs "elected to rebuild their destroyed home" and "incurred costs and made other expenditures associated with the initial rebuilding efforts." (*Id.,* at ¶ 27.) Nevertheless, the FAC also alleges that "the extreme devastation wrought by the wildfires" "hindered, if not fully prevented" Plaintiffs' rebuilding efforts. (*Id.,* at ¶¶ 27-31.) Thereafter, the FAC alleges that "[o]n December 21, 2018, the Tarakanovs sent a letter to Lexington Insurance again requesting coverage under the ERC Coverage and Ordinance Coverage provisions", but do not allege that they

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

8                                                    3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

informed Lexington that the residence had been either repaired or replaced. (FAC, at ¶ 41.) The FAC next alleges that "[s]everal months passed without a response from Lexington" and that "[i]n the intervening time, the Tarakanovs were left in limbo with no indication by Lexington that it would cover the Tarakanovs' costs under the ERC Coverage or Ordinance Coverage should they proceed with the rebuilding .... as the Tarakanovs could not be sure that Lexington would not attempt to deny their claims due to the increased construction costs then prevailing in Northern California." (*Id.*, at ¶ 42.) The FAC then alleges that Plaintiffs "understood Lexington's failure to respond to their inquiry as an indication that it was rejecting their claim for reimbursement of repair and replacement costs" and that "as a result of Lexington's failure to accept their claim under ERC Coverage and Ordinance Coverage provisions ... and without any assurance that Lexington would fully honor the Tarakanovs' policy and cover replacements costs", sold the property for "$1,075,000 less than the price for which they had purchased it." (*Id.*, at ¶ 43.)

Finally, Plaintiffs' FAC alleges that "[o]n March 11, 2019", Lexington "finally responded to the Tarakanovs' December 21, 2018 letter. In that response, Lexington [] confirmed that it was rejecting the Tarakanovs' ERC Coverage and Ordinance Coverage claim." (*Id.*, at ¶ 44.) The FAC admits that "Lexington stated that it would decline to pay under the ERC Coverage and Ordinance Coverage provisions on the ground that the Tarakanovs had not yet completed repairs or rebuilding of their home, adding that 'Lexington *will consider a supplemental claim* for indemnification under the ERC Coverage once the requisite conditions for coverage have been met.' Lexington further explained that the Tarakanovs' claim for repair costs would be 'considered' only after the Tarakanovs had demonstrated they had actually completed repair and replacement" of the insured property. (*Id.*, at ¶ 45.) On that basis, the FAC alleges that Lexington's denial reflected a "position that the Tarakanovs were required to shoulder the burden of repairing and rebuilding their home .... Without any assurance or indication that Lexington would honor or accept their claims for repair coverage under the policy—and in fact, after an initial rejection of the claim." (*Id.*, at ¶ 46.)

On the basis of the foregoing, Plaintiffs allege that notwithstanding that Lexington's March 11, 2019 letter was admittedly *conditional* in its declination of their premature request for payment of amounts under the Lexington policy's ERC and Ordinance Coverages, that the letter "also took the

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7847 NORTH FRESNO STREET
FRESNO, CA 93720

9                                                        3:19-CV-05666LB
Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or
Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

explicit position that Lexington's coverage decision constituted a denial of the Tarakanovs' claim for ERC Coverage", by reciting the policy's "Suit Against Us" provision providing that "[n]o action can be brought against us unless ... the action is started within one year after the date of loss." (*Id.*, at ¶ 47.) Plaintiffs' FAC also alleges that Lexington's March 11, 2019 letter "confirmed the Tarakanovs' understanding that Lexington intended to reject their claim for ERC Coverage and Ordinance coverage and may disclaim any obligation for those coverages" because it "immediately continued by advising that, if the Tarakanovs 'believe this claim has been wrongfully declined or rejected, in whole or in part,' they may contact California's Department of Insurance". (*Id.*) Thereafter, the FAC *admits* that "the policy allowed Lexington to withhold *payment* for repair costs pending completion of the repair", but contends that it nevertheless "did not allow Lexington to *wholly reject* the Tarakanovs' claim." (Emphasis in the FAC.)   Rather, Plaintiffs allege that "Lexington was obligated to acknowledge and accept the Tarakanovs' claim", and that "[w]hile the ultimate payment owed would depend on costs expended to repair the property ... the *obligation* for coverage attached when the loss occurred and the Tarakanovs submitted their claim." (*Id.*, at ¶ 48.)

The FAC also alleges, "on information and belief", that in denying Plaintiffs' claim for payments under the ERC and Ordinance Coverages despite their failure to fulfill the conditions precedent to payment of those coverages, Lexington was engaged in "a deliberate scheme to avoid paying these kinds of insurance coverage". Specifically, the FAC alleges that based on the inclusion of the legally-mandated "Notice to Consumers," Lexington "must know that its policies inform Lexington customers ... [of] Demand Surge" and that such "Demand Surge" can delay insureds' rebuilding. (*Id.*, at ¶¶ 45-50.) Again, solely on "information and belief", the FAC further alleges that "by refusing to honor the Tarakanovs' ERC Coverage and Ordinance Coverage ... Lexington sought to simultaneously (1) discourage the Tarakanovs from rebuilding, as they would be forced to do so without assurance that Lexington would ultimately honor their claim for replacement coverage, and (2) terminate any equitable tolling of the one-year time limit after the loss for the Tarakanovs to bring a claim against Lexington". (*Id.*, at ¶ 51.)  Again on "information and belief," the FAC alleges that "Lexington has developed a scheme that allows the company to insulate itself from repair and replacement costs in the face of widespread disaster, despite its contractual obligations."

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

10                                                                          3:19-CV-05666LB
Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

On the basis of all the foregoing, the FAC alleges a claim for "breach of contract" which alleges that "[t]he Tarakanovs fully performed under the" Lexington policy, and in substance asserts that by "denying the Tarakanovs' claim for recovery under the Policy's ERC Coverage and Ordinance Coverage", Lexington breached its obligations under the Lexington Policy. (Id., at ¶¶ 54-57.) The FAC alleges a second claim for relief for "breach of the implied covenant" alleging that by "denying the Tarakanovs' claims under the Insurance Policy's ERC Coverage and Ordinance coverage, refusing to acknowledge and accept its obligation to cover repair and replacement costs, and forcing the Tarakanovs to contemplate rebuilding their home without any assurance their repair claims would be honored...". (Id., at ¶¶ 58-61.)

By way of its third claim for relief, the FAC alleges that Lexington "is aware of" the legally-mandated Consumer Notice contained in the policy; that Lexington "sold ERC Coverage" to Plaintiffs "and thereby profited", and that it did so despite the fact that, on Plaintiffs' "information and belief", it "knew at the time of sale that it is in fact too difficult and expensive for many ERC Coverage holders to make a claim for ERC", and that Lexington "on information and belief ... concealed from the Tarakanovs its knowledge of this fact" even though it allegedly "was obligated to disclose this fact pertaining to the Tarakanovs' ERC Coverage." (Id., at ¶¶ 62-69.) In support of this claim, the FAC alleges, once more on the sole basis of Plaintiffs' "information and belief", that "Lexington intentionally concealed this fact from the Tarakanovs with the intention of defrauding them through their scheme to avoid paying for ERC Coverage." (Id., at ¶ 70.) The FAC also alleges that "[w]hen the Tarakanovs purchased the [Lexington policy] they relied on information in the Consumer Notice", and that "they were unaware that is often too difficult for ERC Coverage holders to rebuild their homes", but that they "would not have acted as they did if they had known the facts concealed by Lexington." (Id., at ¶¶ 71-74.)

Finally, by way of a fourth claim for relief for "unfair competition" pursuant to California Business & Professions Code §§ 17200, et seq., Plaintiffs' FAC alleges that "by devising a scheme by which it can ignore its obligations to honor E[RC] Coverage and Ordinance Coverage", Lexington engaged in acts constituting "unfair competition".

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

11

3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

## C.    Plaintiffs' December 21, 2018 Correspondence To Lexington

On December 21, 2018, Plaintiffs, through attorney Dennis M. Sullivan, wrote to AIG Claims, Inc.—Lexington's claim administrator. (Declaration of Kevin D. Hansen, ["Hansen Decl."], ¶ 3; Ex. 1.) As relevant, the December 21, 2018 letter asserted that "[a]lthough AIG has paid various claims under the policy … there remains outstanding four major claims that total slightly over $1.0 Million." (*Id.* at p. 1.) The letter expressly confirmed that as of December 21, 2018, Lexington had paid Plaintiffs 100% of the policy limits available to them under the Lexington policy's "Dwelling", "Other Structures", "Contents", "Debris" and "Trees, Shrubs and Other Plants" coverages.[1]

The December 21, 2018 letter also demanded that Lexington pay to Plaintiffs the additional amount of "$750,000 due the Insureds under the 50% Extended Replacement Cost Coverage" and "an additional 10% ($150,000 of the Policy Limits 'for increased costs [they] incur due to the enforcement of any ordinance or law which requires or regulates' the rebuilding of the Dwelling." (*Id.* at pp. 1, 5.) However, it admitted that Plaintiffs had not yet "repaired" or "replaced" the property, instead asserting that "several 'Demand Surge' factors have rendered [rebuilding] factually and *legally* impractical and/or impossible at the present time…" and that Lexington's "unilateral and unreasonable imposition of a non-contractual condition precedent on payment constitutes a willful misinterpretation of the [ECR] coverage endorsement …". (*Id.* at 2 [emphasis in original].)

## D.    Lexington's March 11, 2019 Correspondence To Plaintiffs

On March 11, 2019, through counsel, Lexington responded. (Hansen Decl. ¶ 4, Ex. 2.) In pertinent part, the March 11, 2019 letter included a discussion of the relevant facts, policy provisions and law supporting Lexington's position, and stated that "Lexington respectfully declines to extend payment *at this time* for additional coverage" under the ERC and Ordinance Coverages. (*Id.,* at pp. 1, 19.) In concluding, the letter recited both the Lexington Policy's "Suit Against Us" provision, as well

---

[1] Specifically, the letter confirmed payments in the total sum of $2,121,597.05, including $1,500,000.00 under the policy's "Coverage A (Dwelling)", $150,000 under the policy's "Coverage B (Other Structures)", $274,270.23 under the policy's "Coverage C (Contents)", $47,326.82 under the policy's "Coverage D (Loss of Use)", $75,000.00 under the policy's "Debris Coverage (5% of Dwelling)", and $75,000.00 under the policy's "Trees, Shrubs and Other Plaints (5% of Dwelling)" coverages. (*Id.* at p. 6, and compare to FAC, Ex. A, at p. 4 [Declarations Page].)

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

as the statutorily language informing the insureds that they were entitled to have Lexington's position reviewed by the California Department of Insurance and its contact information.  (*Id.*, at p. 20.)

## IV.    LAW AND ARGUMENT

### A.    Standard On Motions To Dismiss Pursuant To F.R.C.P. 12(b)(6)

Under well-established law within the Ninth Circuit, where, as here, a "plaintiff's claims are predicated on a document, the defendant may attach the document to his 12(b)(6) motion." *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998); *Steinle v. City and Cty. Of San Francisco,* 919 F.3d 1154, 1167 fn. 17 (9th Cir. 2019) (stating that the rule "prevents plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based"); *United States v. Ritchi,* 342 F.3d 903, 907-908 (9th Cir. 2003) (Court may consider evidence outside the pleadings, and documents not included but incorporated by reference into the complaint, or which are not attached to the complaint "if the authenticity of the document is not contested and the complaint necessarily relies on the document."); *Maloney v. Verizon Internet Servs., Inc.,* 2009 WL 8129871 *2-*3 (C.D. Cal. 2009).  Accordingly, because Plaintiffs' claims are self-evidently and admittedly predicated on their December 21, 2018 letter to Lexington and Lexington's March 11, 2019 response, which are identified and discussed in the complaint, Lexington hereby submits for consideration in connection with this motion copies of those letters. (Hansen Decl., ¶¶ 3-4; Exs. 1-2.)

Further, under California law as enforced by Federal Courts, where a complaint asserts claims based on contract, specific allegations contained in the complaint control over more general, contradictory allegations. *Goulatte v. CitiMortgage, Inc.,* Case No. EDCV 12-391 PSG (SPx), 2013 WL 12132060 *3 (C.D.Cal. Feb. 27, 2013) (Stating that, "[i]n general, specific allegations control general allegations", and collecting California cases); *see also, Modern Woodcrafts, Inc. v. Hawley,* 534 F.Supp. 1000, 1010 (D.Conn. 1982) (citing *Harary v. Blumenthal,* 555 F.2d 1113, 1115 n. 1 (2nd Cir. 1977); *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007).

### B.    Plaintiffs' Claim For Breach Of Contract Does Not Allege Facts Supporting A Claim Upon Which Relief Can Be Granted

#### 1.    Plaintiff's Claim For Breach Of Contract Is Expressly Contradicted By The Terms Of The Policy

Under California law, "courts interpret insurance contracts under the 'ordinary rules of

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7847 North Fresno Street
Fresno, CA 93720

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

contractual interpretation'", and "[w]here possible, should determine the mutual intention of the parties 'solely from the written provisions of the insurance policy.'" *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d. 795, 800-801 (9th Cir. 2017), quoting *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1115 (1999).

With respect to the ERC Coverage, the policy provides that coverage pursuant to the Specified Additional Amount Endorsement. (FAC, Ex. A [Docket 13]; *Id.*, at p. 65.) With respect to the Ordinance Or Law Coverage, that coverage is provided pursuant to "SECTION 1 – PROPERTY COVERAGES", "E. Additional Coverage", "11. Ordinance Or Law". (*Id.*, at p. 22.)

However, as relevant to Plaintiffs' right to recover under either the ERC Coverage or the Ordinance Or Law Coverage, the Specified Additional Amount Endorsement states that the policy's "Subparagraph 2. Of Paragraph C. Loss Settlement (SECTION I – CONDITIONS) is deleted and replaced with the following: …", after which it expressly states that: "d. We will pay no more than the actual cash value of the damage *until actual repair or replacement is complete. Once actual repair or replacement is complete*, we will settle the loss as noted in 2.a and b. above. …". (*Id.*, at p. 66; emphasis added.)

Moreover, the policy's "Loss Settlement" provision, as amended by the Specified Additional Amount Endorsement, is fully consistent with California law which, as set forth at Insurance Code § 2051.5(a)(2), states that:

If the policy requires the insured to repair, rebuild, or replace the damaged property in order to collect the full replacement cost, the insurer shall pay the actual cash value of the damaged property or the policy limit, whichever is less, until the damaged property is repaired, rebuilt, or replaced. Once the property is repaired, rebuilt, or replaced, the insurer shall pay the difference between the actual cash value payment made and the full replacement cost reasonably paid to replace the damaged property, up to the limits stated in the policy.

Further, both California and Federal Courts, including the Ninth Circuit, have consistently found that the applicable limiting language reflected in the Lexington policy's "Loss Settlement" provision is enforceable and operates to limit an insurer's obligation to pay more than the "actual cash

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

14                                                      3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

value" of the loss, or the policy limit, whichever is less, *until such time as the insured has actually completed the repair or replacement of the damaged property. Maryland Cas. Co. v. Knight,* 96 F.3d 1284, 1292 (9th Cir. 1996) (repair and replacement condition enforceable and collecting cases from other Circuit Courts of Appeal holding likewise); *Milhouse v. Travelers Commercial Ins. Co.*, 982 F.Supp.2d 1088, 1096-1097 (C.D.Cal. 2013) ("[U]ntil the home is rebuilt, the [insureds] are entitled to no more than the actual cash value of the home."); *Barnes v. Travelers Comm'l. Ins. Co.,* 2018 WL 6431877 *4 (C.D.Cal. Oct. 12, 2018) (same); *Stephens & Stephens XII, LLC v. Fireman's Fund Insurance Co.*, 231 Cal.App.4th 1131, 1147 (2014) (holding that repairing the damaged property was a condition precedent to the insurer's additional obligation to pay the difference between actual cost value and replacement cost); *see also, Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477 (2011) (insurer had no duty to pay extended rebuilding funds until insureds actually rebuilt where endorsement providing coverage required such).

The decision in *Barnes, supra,* 2018 WL 6431877 is directly on point. In *Barnes,* the insured homeowner brought suit against Travelers alleging claims for breach of an insurance contract, breach of the implied covenant, unfair business practices and declaratory relief. *Barnes, supra,* 2018 WL 6431877, at *1. The Travelers policy provided "Extended Replacement Cost Coverage which "provide[d] additional coverage above the dwelling limits up to a stated percentage or specific dollar amount." *Id.* Like the Lexington policy here, the Travelers policy stated at its "Section I – CONDITIONS", "3. Loss Settlement" provision that "Covered property losses are settled as follows: ... (3) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete." *Id.* Consequently, following a loss to the property, Travelers paid Barnes the actual cash value of the property, but declined to pay additional sums—including the ERC—pending completion of repairs to the property. *Id.* After Barnes brought suit, the Court granted summary judgment in favor of Travelers, observing that "it [was] undisputed that he had not completed repair or replacement at the time he filed his claim, nor has he completed repair or replacement to date", and thus was not entitled to recover payment under the ERC coverage. *Id.* at *4-*5.

Here, Plaintiffs' FAC admits that they never repaired or rebuilt the insured property, and contains no allegation that they ever "replaced" the property. (*See generally,* FAC, and at ¶¶ 42-43.)

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

15                                    3:19-CV-05666LB

The allegations of the FAC, in conjunction with Plaintiffs' December 21, 2018 letter, also establish that Lexington paid Plaintiffs the policy limits under the Lexington policy's "Dwelling", "Other Structures", "Debris", and "Trees, Shrubs and Other Plants" coverages following the loss. (Compare, FAC, Ex. A, at p. 4, 55-56 [Declarations Page], to Hansen Decl., ¶ 3, Ex. 1, p. 6, and see Ins. Code §§ 2051, 2051.5(a)(2).)[2] Thus, pursuant to California law and the terms of the Policy's "Condition C. Loss Settlement," as amended by the Specified Additional Amount Endorsement, Plaintiffs were not and are not entitled to collect the ERC or Law Or Ordinance Coverages, and Lexington satisfied its obligation to them by paying them the policy limits pending completion of the repair, rebuilding or replacement of the insured property. (*See,* FAC, Ex. A, at pp. 55-56, and Ins. Code §§ 2051, 2051.5(a)(2).) Accordingly, in appropriately declining to pay sums to Plaintiffs under the ERC and Ordinance Coverages until the insureds established that they had "repaired", "rebuilt", or "replaced" the insured property, as a matter of law Lexington did not breach the policy.

**2.    Plaintiffs Misstate Their Conduct and Misconstrue Lexington's Letter**

Plaintiffs' FAC alleges that they "fully performed under" the Lexington Policy and that Lexington "denied" coverage "under the Policy's ERC Coverage and Ordinance Coverage". These allegations are simply untrue, and are belied by the very letters to which the FAC alludes but does not attach. (FAC, at ¶¶ 55-56.) Rather, as observed above, both the allegations of the FAC and the contents of the letters establish that Plaintiffs *had not* "fully performed" their obligations under the policy: they had neither repaired or rebuilt the insured property, and do not allege a claim that they "replaced" it. (*See generally,* FAC, and at ¶¶ 42-43.)[3]

---

[2] As relevant, Insurance Code § 2051.5(a)(2) states that "[i]f the policy requires the insured to repair, rebuild or replace the damaged property in order to collect the full replacement cost, the insurer shall pay the actual cash value of the damaged property, as defined in Section 2051, until the damaged property is repaired, rebuilt or replaced. …". In turn, Insurance Code § 2051 states that "[u]nder an open policy that requires payment of actual cash value, the measure of the actual cash value recovery, in whole or partial settlement of the claim, shall be determined as follows: (1) In case of total loss of the structure, the policy limit or fair market value of the structure, whichever is less. …".

[3] The December 21, 2018 letter admits this, stating that "several 'Demand Surge' factors have rendered [rebuilding] factually and *legally* impractical and/or impossible…", and contending Lexington "unreasonably interpreted the Policy" by requiring that the insureds complete the "repair" or "replacement" of the property. (Hansen Decl. ¶ 3, Ex. 1, at p. 2.)

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

As well, Plaintiffs' attempts to categorize Lexington's March 11, 2019 as an outright denial of coverage overtly misrepresents the plain meaning of that communication. Rather, and as admitted in the FAC, Lexington's March 11, 2019 position letter *expressly* informed Plaintiffs that "Lexington respectfully declines to extend payment *at this time* for additional coverage under the" ERC and Ordinance coverages, but also expressly stated with respect to each of those coverages that it would "consider a supplemental claim for indemnification under" those coverages "once the requisite conditions for such coverage have been met...". (FAC at ¶¶ 45, 47; Hansen Decl. ¶ _, Ex. 2 at pp. 1, 19. [underlining added, italics in FAC and original].) Lexington's March 11, 2019 letter explained at length—over a total of nine (9) pages—not only that it was Lexington's position that Plaintiffs were *not then* entitled to recovery under the ERC and Ordinance Coverages, but as well, the legal foundation of Lexington's position, while reiterating that the insureds could submit a claim under the ERC and Ordinance Coverages *once they satisfied the conditions precedent to collection under those coverages*. (Hansen Decl., ¶ 4, Ex. 2, at pp. 12-20.) Thus, to the extent Plaintiffs contend that the March 11, 2019 letter conveyed an unequivocal denial under the ERC and Ordinance Coverages, Plaintiffs' claims for "breach of contract" are simply unmoored from any fair reading of the Lexington policy and Lexington's March 11, 2019 position letter.

> **3.      To The Extent Plaintiffs Argue That Lexington Anticipatorily Breached The Policy, That Argument Is Incorrect, And Does Not Save Their Claims**

Plaintiffs' December 21, 2018 letter characterized Lexington's insistence that Plaintiffs repair, rebuild or replace the insured property before recovering under the ERC and Ordinance Coverages as "unilateral and unreasonable imposition of a non-contractual condition precedent" and complained that Lexington "failed to confirm whether or not the company would honor [the ERC and Ordinance] provisions if and when the Tarakanovs rebuilt." (FAC, at ¶ 26.) Nevertheless, and to the extent that Plaintiffs are attempting to articulate a claim for an "anticipatory breach" of the policy, their claims are likewise insufficient to state a claim upon which relief can be granted.

As an initial matter, under California law, an anticipatory breach of contract requires either: (1) an express "clear, positive, unequivocal refusal to perform"; or (2) conduct by which the breaching party makes substantial performance of the non-breaching party's obligations "impossible." *Taylor v.*

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

17                                                3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

*Johnston,* 15 Cal.3d 130, 137 (1975); *Martinez v. Scott Specialty Gases, Inc.,* 83 Cal.App.4th 1236, 1246 (2000). As an initial matter, neither Lexington's alleged "delay" in responding to Plaintiffs, nor its actual response as set forth in the March 11, 2019 letter, constitute either a "clear, positive, unequivocal refusal to perform", or conduct *by Lexington* which would make substantial performance of *Plaintiffs'* obligations under the Policy—rebuilding, repairing, or replacing the insured property— "impossible".

Additionally, where, as here, the event insured against *has already occurred,* no anticipatory breach is possible. *See, e.g., Stephens & Stephens XII, LLC, supra,* 231 Cal.App.4th 1131, 1150 (Holding that "Fireman's Fund's denial of coverage, coming after the occurrence of the damage for which indemnity was sought, was not a repudiation but instead an ordinary breach by nonperformance."); *Garage etc. Employees Union v. Pac. Mut. Life Ins. Co.,* 2 Cal.App.3d 706, 711-712 (1969) ("In the case before us there was not involved the issue of damages for total repudiation. There is no contention that Pacific Mutual cannot in the future respond for future damages. There is no suggestion that Pacific Mutual is insolvent or is about to terminate its affairs. It denied liability to one union member by its letter of October 9, 1963, on the basis of the cancellation of the policy by the union. Pacific Mutual was not repudiating its obligation under the policy. It was adhering to its terms when it advised the member that the policy had been cancelled by the union….[W]e have concluded that the group life policy here has become a unilateral contract, and it is well settled that no cause of action will lie for anticipatory breach of a unilateral contract in California.").

Consequently, for each of those reasons, Plaintiffs' FAC fails to state a claim for breach of contract for which relief can be granted.

C.    **Absent A Viable Claim For Breach Of The Insurance Contract, Plaintiffs' Second Claim For Breach Of The Implied Covenant Should Also Be Dismissed**

As recognized by the Ninth Circuit, California law is crystal clear: "without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 025, 1034 (9th Cir. 2008) (citing *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, (1995)); *Love v. Fire Ins. Exch.,* 221 Cal.App.3d 1136, 1152 (1990) (same); *see also, Murray v. State Farm Fire & Cas. Co.,* 219 Cal.App.3d 58, 65, 66 (1990) (as

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

18                                3:19-CV-05666LB

insured's breach of contract claim failed, so too did their claim for breach of the implied covenant).

Accordingly, because Lexington did not breach the contract in declining to pay Plaintiffs sums under the ERC and Ordinance Coverages, they can have no viable claim for "breach of the covenant". Moreover, the allegation that Lexington took "several months" to respond to their December 21, 2018 letter adds nothing to Plaintiffs' claims because, notwithstanding the alleged delay, Lexington *still* had no legal obligation to Plaintiffs under the ERC and Ordinance Coverages.

### D. Plaintiffs' Third Claim For "Fraudulent Concealment" Also Does Not State A Claim For Which Relief Can Be Granted

Under California law, a claim for "fraudulent concealment" requires an affirmative "suppression of fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." (Civ. Code § 1710; *see also, Id.,* at § 1572; *Hambrick v. Healthcare Partners Med. Grp., Inc.,* 238 Cal.App.4th 124, 162 (2015); *Hernandez v. TLC of the Bay Area, Inc.,* 263 F.Supp.3d 849, 854 (N.D.Cal. 2017) (quoting *Marentes v. State Farm Mut. Auto. Ins. Co.,* 224 F.Supp.3d 891, 923 (N.D.Cal. 2016), and *Hambrick, supra*). Here, however, Plaintiffs' FAC is devoid of any allegation which would even *tend* to establish that Lexington had any "duty" to "disclose" anything to Plaintiffs concerning the statements contained in the Consumer Notice—beyond the statutory requirement that it provide the *Notice itself*—much less that it disclose the entirely nebulous statement that "is in fact too difficult and expensive for many ERC Coverage holders to make a claim for ERC".

In fact, California courts have repeatedly dismissed misrepresentation claims based on contentions that insurers should have disclosed pricing or similar information to insureds procuring a policy in order to protect the insureds' financial interests. *See generally, California Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.,* 62 Cal.App.4th 1166, 1173 (1998) (insurer had no common law duty to disclose pricing information in connection with issuance of policy because "an insured person's initial decision to obtain insurance and the corresponding decision of an insurer to offer coverage remain, at the inception of the contract at least, an arm's length transaction to be governed by traditional standards of freedom to contract.") (citing *Gibson v. Government Employees Ins. Co.,* 162 Cal.App.3d 441, 448 (1984)); *Levine v. Blue Shield of California,* 189 Cal.App.4th 1117,

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

19                                          3:19-CV-05666LB

1127 (2010) (following *California Serv. Station & Auto Repair Ass'n.*). Accordingly, in the absence of any duty to disclose, Lexington cannot be liable to Plaintiffs *even if* it had knowledge that the ERC and Ordinance Coverages could, at times, be difficult or impossible for insureds to collect.

Equally fundamentally, Plaintiffs' claim for "fraudulent concealment" cannot plausibly be actionable because it turns on the alleged failure of Lexington to make statements contradicting or altering language *mandated* by the state. (*See,* FAC at ¶¶ 11-16, 62-72; Ins. Code § 10102.) Unsurprisingly, California law does not place insurers in such a Catch-22. Rather, Insurance Code § 10102(c) expressly provides that although insurers may include additional provisions or statements in the disclosure, the may not include provisions "conflicting with, annulling, or detracting from" the statutorily mandated language. Thus, by its very terms, Insurance Code § 10102 not only fails to impose any duty upon Lexington to caution insureds about the statements contained in the Notice, but also affirmatively precludes it from doing so.  Consequently, Lexington cannot be held liable for complying with its legal obligations respecting the State-mandated Consumer Notice.

Furthermore, the allegations of the FAC simply fly in the face of the actual representations about which Plaintiffs complain. In this respect, any fair reading of the Notice included in the policy reflects that the statements concerning "Demand Surge" are no more than a straightforward statement of a known risk: "[a]fter a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies, and construction." (FAC., Ex. A [Docket 13], at p. 54.) In light of its prior warnings, the Notice further states that an insured might wish to "*[c]onsider* increasing your coverage limits…". (*Id.*, emphasis added.) Put simply, whatever meaning Plaintiffs read into the statements contained in the statutorily-mandated Notice, nothing set forth therein is objectively untrue or incorrect. Moreover, *by its terms* the Notice is nothing more than a list of considerations; *it is not a "promise" upon which Plaintiffs may rely or enforce*: it makes no specific recommendation regarding the extent to which an insured should raise their limits, nor does it *guarantee* that a specific increase in limits or the purchase of an extended coverage will solve all problems the insured may encounter on account of "Demand Surge". (See generally, *Id.*, at pp. 53-54). Thus, Lexington cannot be held liable for failing to assert to Plaintiffs that the inoffensive, unremarkable and broadly true statements of objective "fact" therein are actually untrue, inaccurate, or

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

incorrect. Indeed, to find such a duty would require Lexington to imagine, forecast, and then warn insureds of any conceivable, and potentially innumerable circumstances, in which *a particular insured* might have difficulty recovering under their policy. Moreover, Plaintiffs' position is not logically limited, and thus presumably could be applied to *every* coverage provided. Such an open-ended (and indeed, impossible) duty cannot rationally be the law, and certainly is not the law of California as set forth at Insurance Code § 10102.

Finally, Plaintiffs' FAC includes multiple allegations that Lexington engaged in a "scheme" to conceal from Plaintiffs that they would be unable to collect under the ERC and Ordinance Coverages. Every one of those allegations, however, is predicated solely upon Plaintiffs' own self-serving, and entirely unsupported claim of "information and belief". Under Federal pleading rules, "fraud" allegations must still satisfy the particularity requirement of F.R.C.P. 9(b)—i.e., they must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged", and must "specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir. 1993); *Bly-Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001); *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985). Moreover, where allegations of fraud are pled "on information and belief", the allegations must set forth *specific facts* establishing the basis upon which Plaintiffs' "information and belief" is founded. *Neubronner, supra,* 6 F.3d 666, 672; *United States v. United Healthcare Ins. Co.,* 848 F.3d 1161, 1180 (9th Cir. 2016); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987). Thus, "[b]road allegations that include no particularized detail do not suffice." *United Healthcare Ins. Co., supra,* 848 F.3d 1161, 1180 citing *Bly-Magee, supra,* 236 F.3d 1014, 1018 (rejecting fraud allegations which "included no particularized supporting detail").

Furthermore, the Ninth Circuit has consistently rejected fraud claims, whether plead on "information and belief" or not, which are merely conclusory in nature. *See, Bly-Magee, supra,* 236 F.3d 1014, 1018 (rejecting as insufficient allegations that Defendants had engaged in the "submission of false claims … to avoid repayment of funds", "conspiracy", and attempts to "defraud the United States" on grounds that the allegations were too conclusory to satisfy the particularity requirement of F.R.C.P. 9(b)); *United Healthcare Ins. Co., supra,* 848 F.3d 1161, 1181-1182 (rejecting as insufficient

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

21   3:19-CV-05666LB
Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

claims that gave a detailed recitation of the allegedly fraudulent *conduct*—resubmitting previously paid medical invoices—but which failed to show the basis of Plaintiff's "factual basis" for their claims); *Neubronner, supra,* 6 F.3d 666, 672-673 (rejecting as insufficiently plead claims which alleged what could only be characterized as "suspicious circumstances" where Plaintiff failed to establish facts underpinning the basis of his alleged "information and belief").

Here, the FAC's allegations of a "scheme" by Lexington are generalized and entirely conclusory, in that they are unsupported by *any* allegation of acts, statements or conduct by Lexington—or *any* actual fact whatsoever—which would provide a factual basis supporting either the fraud claim itself or a basis for Plaintiffs' supposed "information and belief". As such, the allegations of the FAC do not suffice to establish a claim for "fraudulent concealment" upon which relief may be granted both because they do not state a factual basis for Plaintiffs' alleged "information and belief", and because they do not satisfy the particularity requirement of F.R.C.P. 9(b).

### E. Plaintiff's Fourth Claim For Unfair Competition Also Fails To Plead Facts Establishing A Claim On Which Relief Can Be Granted

Under California law, it is well established that the Unfair Insurance Practices Act (Ins. Code §790.03) does not "create a private civil cause of action against an insurer[.]" *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 304 (1988). As a result, courts have consistently held that a claim for relief predicated on Business & Professions Code § 17200 cannot be supported based on an insurer's alleged "misrepresentation" of policy terms or failure to timely provide benefits due under the policy. *See Safeco Ins. Co. v. Superior Court*, 216 Cal.App.3d 1491, 1494 (1990) (holding insureds cannot bring Business and Professions Code §17200 claims premised on violations of Ins. Code §790.03(h) because "the Business and Professions Code provides no toehold for scaling the barrier of *Moradi–Shalal*."); *Maler v. Superior Court*, 220 Cal.App.3d 1592, 1597 (1990) (insureds making first party claims cannot bring Business and Professions Code §17200 premised on violations of Ins. Code §790.03(h)); *see also Rubin v. Green*, 4 Cal.4th 1187, 1202 (1993) (discussing and affirming *Safeco* and *Maler*).

Rather "[s]tanding under the UCL is now limited to those who have 'suffered injury in fact and [have] lost money or property as a result of ... unfair competition." Accordingly, to bring a UCL

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

action, a private plaintiff must be able to show economic injury caused by unfair competition." *Zhang v. Superior Court*, 57 Cal.4th 364, 372 (2013) (citing B&P §17204 and *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011).)

Courts have defined the word "unfair" under Business & Professions Code § 17200 as "conduct that threatens an incipient violation of an anti-trust law, or violates the . . . spirit of one of those laws because its effects are comparable to or the same as a violation of the law . . .". *Cel-Tech Communications, Inc., supra*, 20 Cal.4th at 186-187; *Schnall, supra*, 78 Cal.App.4th at 1165-1167. In the present case involving a claims dispute between an insurer and insured, no "incipient violation" of anti-trust law is present such that no cause of action under § 17200 can be predicated on "unfairness."

Here, the thrust of Plaintiffs' claim for "Unfair Competition" effectively mirror the allegations underlying their claims for breach of contract, breach of the implied covenant, and fraudulent concealment: to wit, that by failing to contradict the statements contained in the statutorily-mandated Notice to Consumer, and by declining to pay Plaintiffs insurance proceeds which they were not entitled to, Lexington engaged in a "scheme" to defraud Plaintiffs, thereby engaging in "unfair competition". However, as also outlined above, Plaintiff's allegations of a "scheme" by Lexington to misrepresent the benefits and collectability of their ERC and Ordinance Coverage are entirely predicated on Plaintiffs' own, self-serving and inadequate "information and belief". Accordingly, because the allegations of the FAC inherently seek to impose liability on Lexington for language contained in the Notice statutorily mandated by Insurance Code § 10102, and because the only allegations apart from the denial of coverage are the allegations of a "scheme" predicated on Plaintiffs' own, inadequate claim of "information and belief", the allegations do not state a valid claim for "Unfair Competition" under Bus. & Prof. Code § 17200.

### F.    Alternatively, Plaintiffs' Claim For Punitive Damages Should Be Dismissed

Under California law, the standards governing an award of punitive damages are set forth in Civil Code § 3294(a), which states that: "In an action for the breach of an obligation not arising from contract, where it is proven with clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages may recover damages for

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

23                                                                3:19-CV-05666LB

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or
Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

the sake of example and by way of punishing the defendant."[4] However, "[t]o support punitive damages, the complaint ... must allege ultimate facts of the defendant's oppression, fraud, or malice", and that, as such, "[a]llegations that the acts ... were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law ...". *Altman v. PNC Mortg.*, 850 F.Supp.2d 1057, 1085 (E.D.Cal. 2012), quoting *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317 (1976); *Kelley v. Corrections Corp. of Am.*, 750 F.Supp.2d 1132, 1147 (E.D.Cal. 2010) (holding that although Federal pleading standards apply to claims for punitive damages, following *Twombly* and *Iqbal*, conclusory allegations unsupported by factual pleading are insufficient to support such claims); *Diapaola v. J.P. Morgan Chase Bank*, Case No. C 11-2605 SI, 2011 WL 3501756 *6 (N.D.Cal Aug. 10, 2011) (same); *but see, Rees v. PNC Bank, N.A.*, 308 F.R.D. 266 (N.D.Cal. 2015) (holding conclusory allegations sufficient); *and see, Anaya v. Machines de Triage et Broyage*, Case No. 18-cv-01731 DMR, 2019 WL 359421 *4 (N.D.Cal. Jan. 29, 2019) (acknowledging that the Ninth Circuit has not yet addressed this question following *Twombly* and *Iqbal*, and that District Courts within the Ninth Circuit remain divided).

Here, Plaintiffs' FAC alleges only purely conclusory, boiler-plate allegations reciting the statutorily necessary contention that Lexington acted with "malice," "fraud" or "oppression", and that its conduct was "willful" "wanton" "oppressive" and taken "in conscious disregard of" Plaintiffs. (FAC at ¶¶ 61, 74.) Moreover, their claims are unsupported by anything more than Plaintiffs' own, self-serving allegations on "information and belief", without any actual factual underpinning. Accordingly, Plaintiffs' claim for punitive damages should be dismissed.

G.    **Alternatively, Plaintiffs Should Be Required To Provide A More Definite Statement Of Their Claims**

As outlined above, Plaintiffs' FAC alleges and concedes that Plaintiffs failed to "repair" or "rebuild" the insured property. (FAC at ¶¶ 27, 31, 43.) However, the FAC is utterly devoid of any allegation that they did or did not "replace" that property, much less that Lexington was given notice of such "replacement". (*See generally*, FAC.) Certainly, Plaintiffs' December 21, 2018 letter and the

---

[4] The terms "malice," "fraud," and "oppression" have specific statutory definitions set forth at Civil Code § 3294(c).

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

pleading of its FAC suggest that at least as of December 21, 2018, Plaintiffs had *not* "replaced" the property. Notwithstanding this, Plaintiffs' "breach of contract" claim *does* allege that Plaintiffs' "fully performed under the [Lexington policy]". (*Id.* at ¶ 43.) Because Lexington's prior motion to dismiss pointed out this deficiency in Plaintiffs' initial Complaint, the contradiction here between the FAC's *new* allegation that Plaintiffs have "fully performed" under the policy, and its simultaneous *failure to allege* the actual "replacement" of the insured property or the provision of notice to Lexington regarding such "replacement," is glaring. Accordingly, if the Court does not agree that Plaintiffs' FAC fails to state claims for which relief can be granted, then Lexington respectfully submits that Plaintiffs should be directed to further amend their complaint to provide a more definite statement specifically addressing whether they have or have not "replaced" the insured property, and if so, when and where such "replacement" took place, and also whether notice has been provided to Lexington as required by the Policy and if so when.

## V.    CONCLUSION

For each of the foregoing reasons, Lexington respectfully requests that the Court dismiss Plaintiffs' claims without leave to amend or, in the alternative, dismiss Plaintiffs' claim for punitive damages and/or direct Plaintiffs to file a more definite statement concerning the issue of whether they have or have not "replaced" the property.

Dated: November 25, 2019                               Respectfully submitted,

                                                       McCORMICK, BARSTOW, SHEPPARD,
                                                       WAYTE & CARRUTH LLP

                                           By:_____/s/ James P. Wagoner_____
                                                       James P. Wagoner
                                                       Lejf E. Knutson
                                                       Nicholas H. Rasmussen
                                                       Attorneys for Defendant Lexington Insurance
                                                       Company

6467641.1

Lexington's Notice, Motion and *Corrected* Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California. My business address is 7647 North Fresno Street, Fresno, CA 93720.

On November 25, 2019, I served true copies of the following document(s) described as **DEFENDANT LEXINGTON INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6), OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES, OR FOR A MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(E) AND *CORRECTED* MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

LEWIS & LLEWELLYN LLP
Paul T. Llewellyn
John F. Frost
505 Montgomery Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 800-0590
Facsimile:(415)390-2127
jfrost@lewisllewellyn.com
mlewis@lewisllewellyn.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 25, 2019, at Fresno, California.

Heather Ward

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

3:19-CV-05666LB

Lexington's Notice, Motion and Memo of P&As to Dismiss FAC Pursuant to FRCP 12(b)(6), Or Alternatively, To Dismiss Punitive Damages or For A More Definite Statement Pursuant to FRCP 12(e)